GORSUCH, Circuit Judge,
concurring.
I join Judge Ebel’s opinion for the Court as well as Judge McConnell’s concurrence, with the exception of the discussion in the last paragraph of Section III of the latter opinion regarding the interrelationship between IRCA’s anti-discrimination provision and Title VII.
Judge Lucero and Judge McConnell engage in a perhaps unavoidable disagreement over many highly important issues in this difficult case. But on one issue at least, their dispute seems to me unnecessary. Judge Lucero and Judge McConnell debate in some detail whether and to what degree Title VII analysis should be informed by IRCA’s anti-discrimination provision (8 U.S.C. § 1324b) and the policies and purposes that provision serves.[1] Yet, as Judge McConnell notes, the plaintiff in this case does not allege a violation of the IRCA anti-discrimination provision. See Concurring Op. at 1175 (McConnell, J.). In fact, in his opening appellate brief, Mr. Zamora expressly declined to challenge the district court’s ruling that IRCA’s anti-discrimination provision applies only to “hiring, or recruitment or referral for a fee” and not to decisions, such as in this case, regarding suspension or termination. See Appellant’s Br. at 21.
Under these circumstances, it is unnecessary for us to address the impact of IRCA’s anti-discrimination provision and its underlying policies on Title VII analysis, and I would leave open these matters for resolution another day when the parties before us have reason and opportunity to address them fully. See generally Bowdry v. United Airlines, Inc., 58 F.3d 1483, 1490 (10th Cir.1995) (citing, inter alia, Headrick v. Rockwell Int’l Corp., 24 F.3d 1272, 1277-78 (10th Cir.1994) (White, J.)). *1184 I find it noteworthy that the original panel opinion pursued much the same prudential course. See Zamora v. Elite Logistics, Inc., 449 F.3d 1106, 1113 (10th Cir.2006). Addressing such a novel legal question for the first time en banc and on our own motion — without the benefit of detailed briefing from the litigants affected by our decision, a panel decision on point, or prior opinions from our sister courts — runs the risk of an improvident or ill-advised result given our dependence as an Article III court on the traditions of the adversarial process for sharpening, developing, and testing the issues for our decision. This risk seems to me particularly serious here, where the question addressed is both highly complex and consequential and involves how we are to give proper respect to the directives we have received from Congress in two nuanced and related statutory regimes.

. Notably, too, this debate is waged primarily with citations to competing snippets of legislative history. But see Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 568, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005) ("Judicial investigation of legislative history has a tendency to become, to borrow Judge Leven-thal’s memorable phrase, an exercise in looking over a crowd and picking out your friends.” (internal quotation omitted)).